# In the United States Court of Federal Claims

No. 20-1870C
Filed: August 19, 2021
FOR PUBLICATION

---

**ASKAN HOLDINGS, LTD.,**

*Plaintiff,*

v.

**UNITED STATES,**

*Defendant.*

---

*Teresa N. Taylor*, Butzel Long, P.C., Washington, D.C., for the plaintiff.

*Nathanael B. Yale*, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for the defendant.

## MEMORANDUM OPINION

**HERTLING**, Judge

The plaintiff, Askan Holdings, Ltd., is a foreign company operating in the airline industry. Pursuant to its authority to combat global terrorism, the Treasury Department's Office of Foreign Assets Control ("OFAC") blocked the plaintiff from receiving a refund of its down payment on an aircraft when the prospective purchase failed. The funds were held by a U.S. bank in the United States and not returned to the plaintiff for about four years. Based on the OFAC's action, the plaintiff alleges that the defendant, the United States, acting through the Treasury Department, violated the takings clause of the fifth amendment of the U.S. Constitution.

The defendant has moved to dismiss for lack of subject-matter jurisdiction under Rule 12(b)(1) of the Rules of the Court of Federal Claims ("RCFC") on two grounds. First, the defendant argues that 28 U.S.C. § 1500 bars this court from exercising jurisdiction because, at the time this case was filed, the plaintiff had claims pending in a federal district court based on the same operative facts. Second, the defendant argues that the plaintiff does not have constitutional standing to bring a claim under the takings clause because the plaintiff does not have substantial connections with the United States.

Finding an absence of jurisdiction over the plaintiff's complaint, the Court grants the defendant's motion to dismiss under RCFC 12(b)(1). The Court need not reach the issue of whether the plaintiff has constitutional standing.[1]

## I.    BACKGROUND

### A.    Legal Background

The International Emergency Economic Powers Act ("IEEPA"), codified as amended at 50 U.S.C. §§ 1701-06, grants the President the authority to regulate certain international economic transactions during declared national emergencies. The President's authority under the IEEPA "may be exercised to deal with any unusual and extraordinary threat, which has its source in whole or substantial part outside the United States, to the national security, foreign policy, or economy of the United States, if the President declares a national emergency with respect to such threat." *Id.* § 1701(a). During a declared national emergency, the President has the authority under the IEEPA to regulate any property in which a foreign national has an interest, "subject to the jurisdiction of the United States." *Id.* § 1702(a)(1)(B).

After the September 11, 2001 terrorist attacks, President George W. Bush issued Executive Order 13224, 66 Fed. Reg. 49,079 (Sept. 23, 2001), declaring a national emergency to address those attacks "and the continuing and immediate threat of further attacks," which "constitute an unusual and extraordinary threat to the national security, foreign policy, and economy of the United States . . . ." 66 Fed. Reg. 49,079. Executive Order 13224 authorized the Secretary of the Treasury to promulgate "rules and regulations, and to employ all powers granted to the President by IEEPA . . . as may be necessary to carry out the purposes of [Executive Order 13224]." *Id.* at 49,081. Executive Order 13224 was in effect during all times relevant to this dispute.[2]

Implementing the IEEPA and Executive Order 13224, the Treasury Department issued the Global Terrorism Sanctions Regulations ("GTSR"), 31 C.F.R. pt. 594. Under the GTSR, the OFAC may block certain persons' property and interests in property that are in the United States, that come within the United States, or that come within the possession or control of a U.S. person. 31 C.F.R. § 594.201(a). In other words, OFAC may order property to be withheld from its owner. Those persons whose property may be blocked are listed on the OFAC's Specially Designated Nationals and Blocked Persons List as Specially Designated Global Terrorists ("SDGT"). *Id.* § 594.201(a), Note 2.

Once a property interest is blocked, the property may be unblocked only if the OFAC provides authorization, such as by issuing a license. *See id.* §§ 594.202(c), 594.404(b), 594.502.

---

[1] The defendant also has moved to dismiss the complaint under RCFC 12(b)(6). Lacking jurisdiction over the plaintiff's claims, the Court does not consider those arguments.

[2] In 2019, Executive Order 13224 was amended by Executive Order 13886, 84 Fed. Reg. 48,041 (Sept. 9, 2019). The actions relevant to this case occurred before the amendment.

Upon request, the OFAC may issue a specific license to authorize an otherwise prohibited transaction and release the block on the property. *See* § 501.801(b) (providing the procedure for issuance of specific licenses). Reconsideration of an application for a license or the filing of a subsequent license application is available if the OFAC denies a specific license. *Id.* § 501.801(b)(5).

B.    **Facts[3]**

The plaintiff is an aircraft-holding company registered in Seychelles with its principal place of business in Turkey. (ECF 8, ¶ 1.) It is a wholly owned subsidiary and the dedicated holding company of a Romanian company, Transylvania International Airlines SRL. (*Id.*)

In January 2016, the plaintiff sought to purchase an Airbus A320 aircraft from JetPro International, LLC, a U.S. company based in Arizona. (*Id.* ¶ 5.) The plaintiff made a down payment of $923,000, denominated in U.S. dollars. (*Id.*) The plaintiff deposited its down payment with Froriep, a Swiss law firm that acted as escrow agent. (*Id.*) After the transaction was cancelled, the plaintiff requested that Froriep return the deposit minus its escrow fee. (*Id.*) In February 2016, Froriep attempted to transfer the funds back to the plaintiff, but the OFAC blocked the transaction pursuant to the GTSR, (*id.*), apparently when the transaction went through Deutsche Bank Trust Company Americas ("Deutsche Bank Americas"), a U.S.-based financial institution (*see id.* ¶ 6).

The OFAC instructed Deutsche Bank Americas to hold the plaintiff's funds in an account in the United States. (*Id.*) The blocked funds totaled $915,960.96, consisting of the plaintiff's down payment less escrow fees. (*Id.*) Under 31 C.F.R. § 594.202(c), Deutsche Bank Americas could not return the plaintiff's property without a specific license from the OFAC. (*Id.*)

For several years, the plaintiff attempted to have the funds unblocked. Both Froriep and the plaintiff petitioned the OFAC to unblock the funds in 2016. (*Id.* ¶ 7.) The OFAC denied those petitions, explaining that an SDGT sanctioned under the GTSR was involved in the transaction. (*Id.*) The SDGT allegedly involved was not identified to the plaintiff or Froriep.

In 2019, following efforts to try to determine the basis for the OFAC block on the funds, the plaintiff filed another license application requesting that the OFAC direct Deutsche Bank

---

[3] In considering the defendant's motion to dismiss, the Court assumes the facts alleged in the plaintiff's amended complaint to be true. (ECF 8.) This summary of the facts does not constitute findings of fact but is simply a recitation of the plaintiff's allegations. The defendant in its appendix to its motion to dismiss (ECF 10-1) provides public filings in the plaintiff's litigation in the U.S. District Court for the District of Columbia. The Court also considers these documents from the district court in resolving the defendant's motion to dismiss. *See Shoshone Indian Tribe of Wind River Rsrv., Wyo. v. United States*, 672 F.3d 1021, 1030 (Fed. Cir. 2012) (explaining that a court is not limited to the pleadings when resolving disputed jurisdictional facts).

Americas to release the funds. (*Id.* ¶ 8.) While that application was pending, the plaintiff filed a complaint against the Department of the Treasury, and the Secretary of the Treasury and the Director of the OFAC, in their official capacities, on June 2, 2020, in the U.S. District Court for the District of Columbia, Case No. 20-1458. (*Id.* ¶ 9; *see also* ECF 10-1, Def.'s App. at 1-9 (providing the docket sheet for the plaintiff's case in the district court).)

Although the OFAC denied the plaintiff's 2019 license application, it ultimately issued a license to Deutsche Bank Americas in August 2020 to release the funds to the plaintiff. (ECF 8, ¶ 9.) Deutsche Bank Americas, however, no longer had the funds. (*Id.* ¶ 10.) The bank had turned the funds over to the State of New York's Office of the Comptroller ("Comptroller") as abandoned funds. (*Id.*) The funds had been turned over to the Comptroller by Deutsche Bank Americas pursuant to a license the OFAC had issued to the Comptroller to recover abandoned funds. (*Id.*)

Adding the Comptroller as a defendant, the plaintiff filed an amended complaint in the district court on November 9, 2020. (ECF 10-1, Def.'s App. at 10-25.) The amended complaint asserts five counts: (1) the government failed to file notice of the Comptroller's license in the Federal Register in violation of 5 U.S.C. § 552(a); (2) the government unreasonably delayed action on the plaintiff's application for a license in violation of the Administrative Procedure Act; (3) the government violated the fifth amendment due process clause based on its actions blocking the plaintiff's funds and denying the plaintiff's license applications; (4) the government and the Comptroller violated the fifth amendment due process clause based on their actions escheating the funds to the Comptroller; and (5) the government and the Comptroller conspired to violate federal law in violation of 42 U.S.C. § 1983. (*Id.* at 19-24.)

The plaintiff subsequently stipulated to dismissal of its claims against the Comptroller after the Comptroller agreed to transfer the escheated funds to the plaintiff. (*Id.* at 30-32.) The plaintiff received its funds with interest from the Comptroller in March 2021. (ECF 8, ¶ 10; ECF 10-1, Def.'s App. at 31.)

Despite receiving its funds, the plaintiff alleges that the OFAC's actions caused damages arising from attorneys' fees it incurred, the bankruptcy of Transylvania International Airlines SRL, the loss of investments in its business, and the loss of airline-operations leases and other business opportunities. (ECF 8, ¶ 12.)

## C.    Procedural History

On December 16, 2020, after having filed the action in the district court but before receiving its funds from the Comptroller, the plaintiff filed a complaint in this court. (ECF 1.) That complaint alleged two counts, both captioned "Takings Clause Violation." (*Id.* ¶¶ 36-48.) The first was sub-captioned "Blocking Transaction without Due Process," and the second was sub-captioned "Blocking Transaction – Illegal Comptroller[ ]License." (*Id.* at 9 & 11.) Although the first count was captioned as a takings-clause violation, it alleged a violation of the due process clause of the fifth amendment based on, among other things, insufficient notice, lack of a hearing, and unreasonable delay regarding the plaintiff's license applications. (*Id.* ¶¶ 36-43.) Aside from its caption, the first count did not reference the takings clause. The second

count alleged that the OFAC issued the Comptroller a license "without notice to the public in violation of 5 U.S.C. § 552(a), and [that] the funds . . . were illegally escheated to the Comptroller as unclaimed funds." (*Id.* ¶ 45.)  As a result of the alleged violations in both counts, the plaintiff concluded that the "OFAC illegally blocked [the plaintiff's] right to possess and control its own property." (*Id.* ¶¶ 43 & 48.)  The defendant moved to dismiss the complaint on March 16, 2021.  (ECF 7.)

On April 2, 2021, after recovering its funds from the Comptroller and prior to opposing the defendant's motion to dismiss, the plaintiff filed an amended complaint in which it repackaged its claims into a single count based on the fifth amendment's takings clause. (ECF 8.)  The single count is captioned "Four Year Plus Block of Askan's Property was a Regulatory Taking in Violation of the Fifth Amendment." (ECF 8 at 5.)  The plaintiff alleges that the "OFAC's implementation of laws and regulations pertaining to economic sanctions denied [the plaintiff] complete access to its private property, including the right to use the property in general and to use the property to its full economic advantage." (*Id.* ¶ 14.)  The background factual allegations underlying the legal claim in the amended complaint are nearly identical to the allegations in the plaintiff's original complaint.

The plaintiff seeks damages in the amount of $11,264,897 for the alleged takings-clause violation, a declaration that the defendant violated the takings clause, and attorneys' fees and costs of $663,683.77.  (*Id.* at 7, Prayer for Relief.)

The defendant moved to dismiss the amended complaint (ECF 10), and the motion has been fully briefed.  The Court heard oral argument on August 17, 2021.

## II.     STANDARD OF REVIEW

The defendant has moved to dismiss the plaintiff's complaint for lack of subject-matter jurisdiction under RCFC 12(b)(1).

To determine jurisdiction, a "court must accept as true all undisputed facts asserted in the plaintiff's complaint and draw all reasonable inferences in favor of the plaintiff." *Trusted Integration, Inc. v. United States*, 659 F.3d 1159, 1163 (Fed. Cir. 2011).  The plaintiff has the burden of establishing jurisdiction by a preponderance of the evidence.  *Id.*  When a plaintiff's jurisdictional facts are challenged, only those factual allegations that the defendant does not controvert are accepted as true.  *Shoshone Indian Tribe*, 672 F.3d at 1030.

A court is not "'restricted to the face of the pleadings'" in resolving disputed jurisdictional facts.  *Id.* (quoting *Cedars-Sinai Med. Ctr. v. Watkins*, 11 F.3d 1573, 1584 (Fed. Cir. 1993), *cert. denied*, 512 U.S. 1235 (1994)).  Instead, a court may review evidence outside the pleadings to determine whether it has subject-matter jurisdiction.  *Id.*

If the court lacks subject-matter jurisdiction over a claim, RCFC 12(h)(3) requires dismissal of the claim.

## III.   JURISDICTION

The Tucker Act, 28 U.S.C. § 1491(a), gives the Court of Federal Claims jurisdiction over claims for damages against the United States:

> The United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded either upon the Constitution, or any Act of Congress or any regulation of an executive department, or upon any express or implied contract with the United States, or for liquidated or unliquidated damages in cases not sounding in tort.

28 U.S.C. § 1491(a)(1).  The plaintiff invokes the court's § 1491(a)(1) jurisdiction by asserting a claim founded on the fifth amendment's takings clause, which forbids the taking of private property for public use without just compensation.  (ECF 8, ¶ 3.)

## IV.   ANALYSIS

The defendant argues that the Court lacks jurisdiction over the plaintiff's amended complaint for two reasons: (1) 28 U.S.C. § 1500 bars jurisdiction because the plaintiff had a case pending in the district court based on the same operative facts when it filed the action in this court; (2) the plaintiff does not have constitutional standing to assert a claim based on the takings clause.  Finding that § 1500 bars jurisdiction in this case, the Court reaches only the defendant's first argument under RCFC 12(b)(1).

Section 1500 of Title 28 limits the jurisdiction of the Court of Federal Claims based on the pendency of claims in other courts:

> The United States Court of Federal Claims shall not have jurisdiction of any claim for or in respect to which the plaintiff or his assignee has pending in any other court any suit or process against the United States or any person who, at the time when the cause of action alleged in such suit or process arose, was, in respect thereto, acting or professing to act, directly or indirectly under the authority of the United States.

28 U.S.C. § 1500.[4]  This provision prohibits the Court of Federal Claims from exercising jurisdiction over a suit when another suit "for or in respect to the same claim" is pending in

---

[4] For years the jurisdictional bar of § 1500 has been criticized by both judges and scholars for unduly limiting this court's jurisdiction.  *See, e.g.*, *Keene Corp. v. United States*, 508 U.S. 200, 217 (1993); *Bailey-Johnson v. United States*, No. 02-1078L, 2021 WL 3278191, at *2 (Fed. Cl. July 30, 2021); *Passamaquoddy Tribe v. United States*, 82 Fed. Cl. 256, 262-63 (2008) *aff'd,* 426 F. App'x 916 (Fed. Cir. 2011).  Although recognizing this criticism, absent a change in the law, the Court must apply the provision as written.

another court. *Petro-Hunt, L.L.C. v. United States*, 862 F.3d 1370, 1381 (Fed. Cir. 2017) (citing *Keene Corp. v. United States*, 508 U.S. 200, 209 (1993)).

To determine whether jurisdiction is barred by § 1500, the analysis entails two prongs: "(1) whether there is an earlier-filed 'suit or process' pending in another court, and, if so, (2) whether the claims asserted in the earlier-filed case are 'for or in respect to' the same claim(s) asserted in the later-filed Court of Federal Claims action." *Brandt v. United States*, 710 F.3d 1369, 1374 (Fed. Cir. 2013) (citing *Trusted Integration*, 659 F.3d at 1163-64). If both prongs are answered in the affirmative, the § 1500 bar applies, and the claim in the Court of Federal Claims must be dismissed. *Id.*

### A.     Pending Suit

The first prong is satisfied and undisputed. (ECF 13 at 11.) When the plaintiff filed its original complaint in this court in December 2020, it had a case pending in the U.S. District Court for the District of Columbia since June 2, 2020. (*See* ECF 10-1, Def.'s App. at 1-9 (providing the docket sheet for the plaintiff's case in the district court).)

### B.     Same Claim

The second prong is also satisfied. Under the second prong, the Court must determine whether the two cases are "for or in respect to" the same claim. 28 U.S.C. § 1500. "Two suits are for or in respect to the same claim, precluding jurisdiction in the [Court of Federal Claims], if they are based on substantially the same operative facts, regardless of the relief sought in each suit." *United States v. Tohono O'Odham Nation*, 563 U.S. 307, 317 (2011). The operative facts in the two complaints "need not be identical," *Kingman Reef Atoll Invs., L.L.C. v. United States*, 103 Fed. Cl. 660, 704 (2012), but there must be "sufficient factual overlap" between the two complaints to trigger § 1500's bar. *Tohono*, 563 U.S. at 317.

The Court must consider § 1500's jurisdictional bar only in relation to the plaintiff's original complaint in this court, not its amended complaint. *See Cent. Pines Land Co. v. United States*, 697 F.3d 1360, 1367 (Fed. Cir. 2012) ("[J]urisdiction under § 1500 is dependent on the state of things when the action is brought, and cannot be rescued by subsequent action of either party or by resolution of the co-pending litigation."). The plaintiff's amended complaint is irrelevant to the § 1500 analysis. *See Res. Invs., Inc. v. United States*, 785 F.3d 660, 669 (Fed. Cir. 2015) (holding that an amended complaint is irrelevant in a § 1500 analysis), *cert. denied*, 136 S. Ct. 2506 (2016). Because the applicability of § 1500's bar is determined at the time the complaint is filed in this court, a potential dismissal of the plaintiff's still-pending suit in the district court is also not relevant to the resolution of the defendant's motion to dismiss. *See Cent. Pines Land Co.*, 697 F.3d at 1367.

Faced with binding precedent from the Federal Circuit, the plaintiff, in its response brief, did not dispute that the Court must analyze the defendant's claim that § 1500 bars the suit by reference to the original complaint. (ECF 13 at 11.) At oral argument, however, the plaintiff urged the Court to look to its amended complaint to identify the operative facts, which the plaintiff alleges are also reflected in its original complaint.

The Federal Circuit's precedents are clear—the plaintiff's amended complaint is irrelevant to the analysis of whether § 1500 bars the plaintiff's suit.  Under the applicable precedents, the Court examines only the plaintiff's original complaint in considering the motion to dismiss under § 1500.

### 1.    Comparison of Complaints

Although the plaintiff argues that its complaints in the district court and here share only background facts (*id.* at 12), a comparison of the plaintiff's amended complaint in the district court with its original complaint in this court reveals that the claims in both cases are based on the same operative facts.  Many of the plaintiff's allegations in this court appear to have simply been cut and pasted from its amended complaint in the district court, and many others are similarly worded.

The underlying allegations in both complaints are the same.  Both narratives are organized identically in a three-part background section with only minor variation in the word choice of the headings.  (*Compare* ECF 1, ¶¶ 4-35 *with* ECF 10-1, Def.'s App. at 12-19.)  The narratives begin with the plaintiff's failed purchase of an aircraft.  (ECF 1, ¶¶ 11-13; ECF 10-1, Def.'s App. at 14-15.)  The plaintiff then alleges facts centering on the OFAC's blocking of the plaintiff's down payment and denial of the plaintiff's license applications.  (ECF 1, ¶¶ 14-25; ECF 10-1, Def.'s App. at 15-17.)  Finally, the plaintiff alleges facts about the OFAC's issuance of the license to the Comptroller to escheat the funds.  (ECF 1, ¶¶ 26-35; ECF 10-1, Def.'s App. at 17-19.)

The plaintiff's original complaint in this court alleged two counts.  (ECF 1, ¶¶ 36-48.) Not only do the two counts reallege the underlying facts from the background section (*id.* ¶¶ 36 & 44), but both counts are supported by additional factual allegations that substantially mirror those that also support the counts the plaintiff alleged in the district court.

### a.    Count 1

The first count in the original complaint in this court alleged that the defendant violated the takings clause by blocking the plaintiff's funds without affording it due process.  (*Id.* ¶¶ 36-43.)  Although the count was captioned as a takings-clause violation, the plaintiff alleged a violation of the due process clause of the fifth amendment without mention of the takings clause outside the count's caption.  (*Id.*)  The plaintiff based its claim on allegations that the OFAC, among other things, failed to provide the plaintiff with sufficient notice and a hearing, unreasonably delayed processing the plaintiff's license applications, and failed to provide to the plaintiff in a timely manner the unclassified information supporting the OFAC's determination without ever identifying the alleged SDGT.  (*Id.*)

The plaintiff made nearly identical allegations to support its claims in the district court. (*Compare id.* ¶¶ 36-43 *with* ECF 10-1, Def.'s App. at 21-22.)  Based on the Administrative Procedure Act ("APA"), the second count in the district court is supported, in part, by allegations that the OFAC failed to provide notice and unreasonably delayed processing of the plaintiff's license applications.  (ECF 10-1, Def.'s App. at 20-21.)  The third count in the district court

alleges that the government violated the fifth amendment's due process clause and is supported by facts similar—some of which are word for word—to those alleged in this court.  (*Id.* at 21-22.)  The following table provides a side-by-side comparison of notable similarities:

**Comparison of the Plaintiff's Complaints**

| Count 1 in this Court | Counts 2 and 3 in the District Court |
| --- | --- |
| "OFAC violated Askan's Fifth Amendment Due Process rights by failing to provide Askan in a timely manner with (1) the unclassified information supporting OFAC's determination and (2) unclassified summaries of the classified information supporting that determination."  (ECF 1, ¶ 39.) | "OFAC violated Askan's Fifth Amendment Due Process rights by failing to provide Askan in a timely manner with (1) the unclassified information supporting OFAC's determination and (2) unclassified summaries of the classified information supporting that determination."  (ECF 10-1, Def.'s App. at 22.) |
| "Among other things, the OFAC has never identified the alleged SDGT that gave OFAC the authority under 31 C.F.R. § 594.201 to block Askan's property in the United States. But the identity of all SDGTs is a matter of public record since all SDGTs are required to be listed on the SDN List."  (ECF 1, ¶ 40.) | "Among other things, the OFAC has never identified the alleged SDGT that gave OFAC the authority under 31 C.F.R. § 594.201 to block Askan's property in the United States. But the identity of all SDGTs is a matter of public record since all SDGTs are required to be listed on the SDN List."  (ECF 10-1, Def.'s App. at 22.) |
| "By failing to provide Askan with legally sufficient notice and a hearing required under the Due Process Clause of the Fifth Amendment, and by unreasonably delaying its response to several applications for a license to allow Deutsche Bank Americas to return the down payment to Askan, OFAC exercised dominion and control over Askan's property and deprived Askan of all use, enjoyment, and rights to the down payment." (ECF 1, ¶ 37.) | "The Administrative Procedure Act further requires that prompt notice be given of the denial of a written application, petition, or other request made by an interested person in an agency proceeding. . . . It took OFAC more than one year to act on the license applications filed in 2016, and more than ten months to grant the license application Askan filed on October 9, 2019.  As a result of these delays, the Comptroller took control of the funds in the blocked Deutsche Bank Americas account and those funds escheated to the State of New York."  (ECF 10-1, Def.'s App. at 21 (citation omitted).) |

As the table reflects, many of the operative paragraphs of the first count of the complaint in this court are nearly identical to the claims the plaintiff presented in the district court.

b.      Count 2

The second count in the original complaint in this court alleged that the defendant violated the takings clause by blocking the plaintiff's funds and issuing the license for the Comptroller to escheat the funds. (ECF 1, ¶¶ 44-48.) The plaintiff based its claim on allegations that the OFAC issued the Comptroller a license "without notice to the public in violation of 5 U.S.C. § 552(a), and [that] the funds . . . were illegally escheated to the Comptroller as unclaimed funds." (*Id.* ¶ 45.) The plaintiff alleged that no one notified it that the funds had been escheated, and that the funds had in fact not been abandoned. (*Id.* ¶¶ 46-47.)

As it did regarding the first count, the plaintiff's second count alleges claims nearly identical to those it alleged in the district court. (*Compare id.* ¶¶ 44-48 *with* ECF 10-1, Def.'s App. at 19-23.) The first count in the district court was based on the OFAC's alleged failure to file notice of the Comptroller's license in the federal register in violation of 5 U.S.C. § 552(a). (ECF 10-1, Def.'s App. at 19-20.) The fourth count in the district court is based on allegations that the funds were illegally escheated to the Comptroller as abandoned funds without notice to the plaintiff. (*Id.* at 22-23.) The following table provides a side-by-side comparison of notable similarities:

## Comparison of the Plaintiff's Complaints

| Count 2 in this Court | Counts 1 and 4 in the District Court |
|---|---|
| "OFAC issued the Comptroller License without notice to the public in violation of 5 U.S.C. § 552(a), and the funds in the Deutsche Bank America's account, which Askan claimed, were illegally escheated to the Comptroller as unclaimed funds." (ECF 1, ¶ 45.) | "Askan has been adversely affected by OFAC's failure to comply with 5 U.S.C. § 552(a) because more than two months after OFAC issued a license on August 17, 2020 to Deutsche Bank to release the funds to Askan, Askan has still not been able to get its down payment back." (ECF 10-1, Def.'s App. at 19.) |
| "Before August 28, 2020, Askan never received a letter or any other notice from OFAC, Deutsche Bank Americas, or the Comptroller that the Comptroller had taken physical control over Askan's down payment." (ECF 1, ¶ 46.) | "Neither OFAC nor Deutsche Bank Americas nor the Comptroller provided Askan with any notice when Deutsche Bank Americas transferred Askan's down payment to the Comptroller in November 2019." (ECF 10-1, Def.'s App. at 22.) |
| "The Comptroller, acting together with OFAC, has exercised control and dominion over, and continues to exercise control and dominion over funds that Askan had never abandoned, and that rightfully belonged to Askan." (ECF 1, ¶ 47.) | "The Comptroller exercised and continues to control and dominion [sic] over funds that Askan claimed, that Askan had never abandoned, and that rightfully belonged to Askan." (ECF 10-1, Def.'s App. at 23.) |

As with the first count of its complaint in this court, the plaintiff's second count closely mirrors the analogous claims in its complaint in the district court.[5]

## 2.      Principles of Res Judicata

Courts consider the principles underlying the doctrine of res judicata to determine whether two suits are based on sufficiently similar operative facts to trigger § 1500's bar. *Trusted Integration*, 659 F.3d at 1164 (citing *Tohono*, 563 U.S. at 315-16). In *Tohono*, the Supreme Court relied on two res judicata tests that were in force at the time § 1500's predecessor was enacted in 1868, and both tests turn on the underlying facts, not the relief requested. *Tohono*, 563 U.S. at 316. These tests are commonly referred to as the "act or contract test" and the "evidence test." *See Trusted Integration*, 659 F.3d at 1169. If either one of the two tests is satisfied, § 1500 precludes jurisdiction over a claim in this court. *Res. Invs., Inc.*, 785 F.3d at 666. The conclusion that the plaintiff's two suits here are based on the same operative facts is consistent with the principles of res judicata embodied in both tests.

### a.      Act or Contract Test

Under the "act or contract test," "'rights of action which are single and entire . . . immediately arise out of one and the same act or contract . . . .'" *Tohono*, 563 U.S. at 316 (quoting J. Wells, *Res Adjudicata and Stare Decisis* § 241, p. 208 (1878)). The plaintiff argues that an approach looking only at the defendant's action of blocking the funds is too broad. (ECF 13 at 13.) In the narrower approach it proposes, the plaintiff argues that the cases arise from different acts: the case in this court arises from the OFAC's blocking of its funds, and the case in the district court arises from the OFAC's conduct after the blocking. (*Id.* at 13-14.) In other words, "[t]here is OFAC blocking [the plaintiff's] funds (the Federal Claims case) and OFAC obstructing information regarding the license denials and the escheatment as alleged in the District Court Lawsuit." (*Id.* at 14.)

The matter need not be analyzed broadly; a narrow analysis, as advocated by the plaintiff, produces the same outcome. The plaintiff's efforts to distinguish the focus of the two suits are undercut by the similarity between the complaints. Both this suit and the plaintiff's district court suit focus on the same acts, including the acts that the plaintiff argues are alleged only in the district court: the blocking of the plaintiff's funds, the failure to grant its application for a license in a timely manner, and the issuance of the Comptroller's license to escheat the funds. From the face of both the complaint here and the complaint in the district court, the claims arise out of the same acts of the defendant. All the plaintiff's claims arise out of the initial blocking of its property by the OFAC. If not for that initial blocking of the plaintiff's property, the plaintiff has no complaint in either court. In effect, the plaintiff is trying to distinguish its two cases based on the relief it seeks, but *Tohono* specifically precludes reliance on that distinction. *See Tohono*,

---

[5] The plaintiff's claims in its fifth count in the district court are based on 42 U.S.C. § 1983 and bear no relationship to either count raised in its complaint here. (ECF 10-1, Def.'s App. at 23.)

563 U.S. at 317 ("Two suits are for or in respect to the same claim, precluding jurisdiction in the [Court of Federal Claims], if they are based on substantially the same operative facts, *regardless of the relief sought in each suit*." (emphasis added)).  Aside from the different relief it seeks under each complaint, the only distinction to which the plaintiff can point is that its claims in the district court arise under 42 U.S.C. § 1983 and the Freedom of Information Act, 5 U.S.C. § 552. These claims too arise out of the initial blocking of the property, which lies at the root of both complaints, and all claims are integrally related to that action.  The only possible conclusion is that the claims in both the plaintiff's complaint in the district court and its complaint in this court are based on the same set of operative facts.

### b.   Evidence Test

Under the "evidence test," two claims are the same if "'the same evidence support[s] and establish[es] both the present and the former cause of action.'"  *Tohono*, 563 U.S. at 316 (quoting 2 H. Black, *Law of Judgments* § 726, p. 866 (1891)).  The plaintiff argues that the evidence in the district court will be limited by the APA to an administrative record developed by the OFAC, but that the evidence in this court will extend beyond that record.  (ECF 13 at 12.)

Not all the plaintiff's claims in the district court, however, were in fact brought under the APA.  The plaintiff has failed to support its argument that a claim based on the administrative record cannot preclude jurisdiction under § 1500 of a non-administrative record claim. Moreover, the Supreme Court has held that the legal theory underlying the claims in the district court and this court is irrelevant.  *Keene Corp.*, 508 U.S. at 212-13.  Rather, it is the evidence underlying the claims that forms the fulcrum of the analysis.

Both the plaintiff's suit in the district court and the one here would likely rely on the same evidence: documents and testimony regarding the blocking of its funds; the denial of the plaintiff's license applications; the issuance of the Comptroller's license to escheat the funds; and the identity of the SDGT.  The evidence may be used in different ways in either case due to the distinct nature of the claims in each court, but in both cases the evidence is likely to be the same.

Under either test for res judicata, this case and the plaintiff's case in the district court are based on the same operative facts.  Section 1500 bars the Court from hearing the plaintiff's case in this court.

## V.   CONCLUSION

Section 1500 prevents redundant litigation by barring this court from exercising jurisdiction over a claim when a plaintiff has a case pending in another court "for or in respect to" the same claim.  When the plaintiff filed its original complaint in this court, the plaintiff had claims based on the same operative facts pending in the U.S. District Court for the District of Columbia.  This case is precisely the sort § 1500 precludes.

Under 28 U.S.C. § 1500, the Court lacks jurisdiction over the plaintiff's claim and must dismiss the complaint. RCFC 12(b)(1) & 12(h)(3). The defendant's motion to dismiss under RCFC 12(b)(1) for lack of jurisdiction is granted.

The Court will issue an order in accordance with this memorandum opinion.

s/ Richard A. Hertling
**Richard A. Hertling**
**Judge**

13